PHEBE HUNT v. ELIZABETH HUNT, EDMUND W. HUNT AND GEORGE N. POTTER.

*Priority of Mortgage.*

A mortgage was taken which by mistake omitted certain property it was intended to cover. A third person authorized to procure its correction, secured for himself a mortgage upon the whole, and offered the original mortgagee an interest in this mortgage to the amount of the former one. The offer was declined. *Held* that the original mortgage remained in force and was prior to the other, and a decree was made rectifying and foreclosing it.

Appeal from Eaton. Submitted January 10 and 11. Decided January 15.

38 MICH.—21.

BILL TO CORRECT AND FORECLOSE a mortgage. Complainant appealed. The facts are in the opinion.

*Crane & Montgomery* for complainant and appellant.

*Edward A. Foote* for defendant Potter.

CAMPBELL, C. J.   Complainant filed a bill to correct and foreclose a mortgage for $5,000 and interest, dated on the 18th of March, 1871, and executed by her son and his wife, two of the defendants.   The defendant Potter, who is made a party as a subsequent encumbrancer, set up in defense that this mortgage was extinguished and the debt merged in a new security for $8,080, given to him November 25, 1873, and including the amount due to complainant, as well as other sums belonging to himself.   He claimed that complainant assented to the cancellation of her mortgage and the execution of the later mortgage in pursuance of certain arrangements intended to remove defects in her securities.   The court below made a decree giving her an interest in the later mortgage commensurate in amount with her claim, under certain conditions and restrictions not necessary to be set forth at length.   She appealed.

It is admitted on both sides that it was irregular to make such a decree on the pleadings as they stand. But as it is claimed she was not aggrieved by it, the merits of the case require some attention.

It was discovered in 1873, in November, that the mortgage held by complainant did not contain certain property, including a mill, which it was understood should have been included.   Defendant Potter also seems to have discovered certain defects in the title, whereby Edmund W. Hunt had only a perfect title to one-fourth, one-half being in complainant's husband, and the remainder elsewhere.   Complainant was alarmed by the omission of the land, and defendant Potter was authorized to negotiate with Edmund to have the mortgage corrected.   This he seems to have undertaken, but it is claimed with such

fraudulent designs and measures as were not calculated to place complainant where she desired to be. Upon this question of fraud, which is in issue elsewhere, it is not important to dwell now.

Defendant Potter got up certain outstanding titles, and among others obtained a quit-claim from complainant's husband and herself of the undivided half interest, but expressly subject to her mortgage. There was a prior mortgage of $1,200, or thereabouts, held by one Smith, which was not taken up. He then made an arrangement whereby he conveyed to Edmund Hunt all the titles thus obtained and took back a mortgage for $8,080, which is claimed to include the amount of complainant's mortgage and of the Smith mortgage, and his advances.

Complainant had entrusted him with her mortgage and her son's note secured by it, and he canceled this note when he took the mortgage to himself.

Complainant knew nothing of the arrangements between Potter and Edmund until after they had been executed, and claims she never assented to become interested in them. Defendant claims she agreed to accept other mortgages in lieu of hers, and that at one time she agreed to take an interest of $5,000 in the $8,080 mortgage in lieu of her other security. She insists she never made such an arrangement.

There is considerable testimony which it would serve no useful purpose to discuss at length. We shall content ourselves with giving our conclusions from it.

We think the evidence is very clear that complainant never authorized either Potter or her brother Harlow Fellows to do anything beyond procuring the rectification of her mortgage, by negotiation or by proceedings in equity, and that the course taken by Potter to buy up the outstanding titles and convey to Edmund and take back a mortgage to himself was never contemplated or done by her permission. She never authorized her note to be given up and never desired to enter upon new relations

with other persons than her son until after this was done, if at all.

After Potter had made his arrangements with Edmund there were negotiations with him of various kinds for giving to her distinct and separate security by Potter himself,—and possibly (although we do not think it clearly made out), to accept the mortgages of other persons with his personal responsibility. She also took into consideration at one time his proposal to give her an interest in the large mortgage. But none of these propositions ever assumed any more definite form than proposals, and they were all finally rejected and the parties relegated to their original position, except as to the note which had been canceled without her knowledge or consent.

We find nothing to induce us to believe that complainant has ever, either morally or legally, debarred herself of any of her interests in the original mortgage. The mortgagee does not dispute it, and her rights, under any circumstances, must have priority over those of Potter.

For obvious reasons we do not care to discuss any questions of fact involved in the other litigation, which are not necessary to be dealt with here.

We think complainant was entitled to a decree rectifying and foreclosing her mortgage for the full amount of principal and interest thereon, allowing $600 interest as paid thereon before November 25, 1873. The decree below must be reversed and a new decree entered in conformity with these views, with costs of both courts against Potter, and the case remanded for further proceedings.

The other Justices concurred.